FILED
U.S. DIST. COURT
SAVANNAH DIV.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

MAY 17  10 27 AM '96

CLER... *[signature]*
SO. DIST. OF GA.

| | |
|---|---|
| MATTHEW WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. CV695-104 |
| ) | |
| A.A. ALAIMO, Judge; AVANT ) | |
| EDENFIELD, Chief Judge; ) | |
| DUDLEY H. BOWEN, JR., Judge; ) | |
| WILLIAM T. MOORE, JR., Judge; ) | |
| W. OWENS, Judge; JAMES E. ) | |
| GRAHAM, Magistrate Judge; C.W. ) | |
| HICKS, JR., Magistrate Judge, ) | |
| ) | |
| Defendants. ) | |

## O R D E R

On April 5, 1996, this Court ordered Plaintiff to show cause
why this Court should not impose Rule 11 sanctions upon him for
filing a motion for improper purposes.  The motion which Plaintiff
filed was entitled "Motion to Kiss My Ass" (Doc. 107) in which he
moved "all Americans at large and one corrupt Judge Smith [to] kiss
my got [sic] damn ass sorry mother fucker you."  This Court gave
Plaintiff until April 25, 1996, to respond and specifically warned:
"Failure to comply with this Order will result in dismissal of this
case."  Plaintiff has appealed the show-cause order to the United
States Court of Appeals for the Eleventh Circuit.  As the April 5
Order was not a final order, Plaintiff's appeal is an interlocutory
appeal and, as such, this Court retains jurisdiction over the
parties and matters in this case.  28 U.S.C. § 1292(b).  As of the
date indicated below, Plaintiff has not responded to the show-cause

1

*31*

order.  Therefore, this Court **DISMISSES WITH PREJUDICE** the above-captioned case for Plaintiff's complete disregard of and noncompliance with an explicit court order.  FED. R. CIV. P. 41(b); LOCAL RULE 41.1(b); see Goforth v. Owens, 766 F.2d 1533 (11th Cir. 1985) (holding that district court's power to dismiss action under Rule 41(b) for failure to obey court order is inherent aspect of its authority to enforce its orders).  All outstanding motions are hereby rendered **MOOT**.

This Court also observes that this is not the first instance in which Plaintiff has abused the civil right forum of this Court provided through 42 U.S.C. § 1983 and finds that certain restrictions, as outlined below, need to be placed upon prospective lawsuits initiated by Plaintiff in order to protect parties from abusive litigation and to protect the federal judiciary's integrity of purpose.

On March 20, 1976, Plaintiff walked into a Savannah sporting goods store and paid $149 for a 12 gauge shotgun.  The next day, five Chatham County Police officers responded to a complaint from a woman on Stuyvesant street.  She stated that she was afraid to sit on her back porch because someone was shooting a gun.  The police officers investigated the incident and found the source of the trouble to be Plaintiff, who initially confronted the officers while on his front porch.  Plaintiff then ran into his house.  Two of the officers pursued him through the front door while the other three entered his house through the back door.  Plaintiff could not

2

be seen in the house and the officers began searching for him.  One officer, J. Waters, happened upon a closet and soon thereafter saw the end of a shotgun barrel coming out of the darkness of the closet.   Officer Waters warned the others to get back and the shotgun fired.  Buckshot pellets hit Officer Waters in the head and Officer J.R. McNeely in the left hand.  Plaintiff fired the gun again and the second shot hit Officer Alex Hodgson in the chest; Officer Hodgson died from the injuries sustained.  Plaintiff, who had previously been acquitted of another murder charge by reason of insanity, was arrested sometime that day.  (*See* SAVANNAH MORNING NEWS, March 22, 1976, p. 1B.)

Plaintiff was convicted for the murder of Officer Hodgson and for three counts of aggravated assault.  On January 24, 1977, the Superior Court of Chatham County (Cheatham, J.) sentenced Plaintiff to life imprisonment for the murder conviction (Chatham Co. Indictment No. 25162), ten years for the aggravated assault of Pat Howard (Chatham Co. Indictment No. 25163), ten years for the aggravated assault of Waters (Chatham Co. Indictment No. 25164), and ten years for the aggravated assault of McNeely (Chatham Co. Indictment No. 25165); the sentences were set to run consecutively. The Georgia State Department of Corrections committed Plaintiff to Georgia State Prison in Reidsville where he is currently serving his sentence.

Since his commitment to the state prison system, Plaintiff has become a frequent litigant within the federal courts seeking relief

3

through the auspices of 42 U.S.C. § 1983.  The Clerk of Court for the Superior Court of Chatham County has also informed this Court that Plaintiff is frequently suing for various forms of relief through the state court system as well.  What distinguishes Plaintiff from most prisoner litigants in federal courts is that he pays his filing fee rather than submit an application to proceed *in forma pauperis* under the provisions of 28 U.S.C. § 1915.  It has come to the attention of this Court that Plaintiff's litigation practice is largely, if not entirely, underwritten by the Federal Treasury as he periodically receives a substantial check for veterans' disability benefits.  By paying his filing fee, Plaintiff has thus far avoided the filter of the 28 U.S.C. § 1915(d) frivolity review.  As a result, patently frivolous lawsuits have languished in this district longer than would otherwise be warranted with other prisoner litigants.

Plaintiff has shown in his dealings with the courts in this District that he lacks the ability or will to govern his suits with the civility and order required by the Local Rules and by the Federal Rules of Civil Procedure.  He has wasted the time of many an innocent party and he has flippantly used the resources of the judiciary with his abusive motions filing practice.

In <u>Matthew Washington v. Bobby Whitworth, et al.</u>, 6:91cv87, this Court's experience with Plaintiff began.  In that case, Plaintiff filed the Complaint on November 8, 1991, and soon commenced his motion filings practice.  In February 1992, he moved

4

to change venue.  Then, he initiated the trademark of his practice: the Motion to Amend Complaint.  He moved to amend his complaint on March 6, 1992, on April 15, 1992, and on December 14, 1992.  After a couple allowances of amendment, Judge Dudley H. Bowen, Jr., began denying Plaintiff's motions to amend.  Soon thereafter he moved to disqualify Judge Bowen and began filing "Extraordinary Motions to Amend" including one which desired to add the United States Secret Service as a party.

Plaintiff began filing frivolous motions on a weekly basis and, in that relatively simple civil rights lawsuit, he ended up filing more than seventy-five pleadings, all of which required the considered attention of this Court and Judge Bowen.  These motions included "Motion to Behoove an Inquisition" and "Motion for Judex Delegatus" and "Motion for Restoration of Sanity" and "Motion for Deinstitutionalization".   In one instance, he indicated the recreational tilt of his litigation when he filed a "Motion for Publicity" regarding a trial which had been set for March 23, 1995, in Statesboro.  At the time of trial, Plaintiff filed a "Motion to Vacate Jurisdiction" which was denied.  Even after judgment as a matter of law was entered against him at the trial, Plaintiff did not perceive his case as complete.  He renewed the filing of "Extraordinary Motions to Amend" and filed his appeals, fees paid, with the United States Court of Appeals for the Eleventh Circuit.

After one year of motions filing after the case had been closed, this Court ordered Plaintiff to quit submitting motions in

a closed case and directed the Clerk to return to Plaintiff any
further pleading filed by him.  Plaintiff "one-upped" the Clerk
when he filed a Notice of Appeal from that order; the notice, of
course, had to be placed in the case file.

In Matthew Washington v. James T. Morris, et al., 4:93cv114,
Plaintiff set out to sue a host of individuals, including the
Superior Court judge who presided over his the Hodgson murder trial
and the attorney who defended him in that trial.  Plaintiff filed
the complaint on May 20, 1993, and sought to amend it on June 7,
1993, July 21, 1993, July 23, 1993, November 2, 1993, November 5,
1993, December 14, 1993, December 22, 1993, January 23, 1995, March
2, 1995, March 29, 1995, and on October 20, 1995.  At least one of
these Motions to Amend sought to add Magistrate Judge James E.
Graham as a party defendant.  Plaintiff filed fifty-four pleadings
in that case, all of which required the considered attention of
Judge Anthony A. Alaimo or Magistrate Graham.   The motions ranged
from the mundane, such as "Motion for Change of Venue", to the
arcane, such as "Motion for Cesset pro Cessus" and "Motion for
Judex Delegatus", to the curious, such as "Motion for Nunc pro
Tunc" and "Motion for Psychoanalysis", to the outlandish, such as
"Motion to Impeach Judge Alaimo" and "Motion to Renounce
Citizenship" and "Motion to Exhume Body of Alex Hodgson".
Plaintiff also filed numerous interlocutory appeals, which required
the attention and utilization of the resources of the Court of
Appeals.  The case was disposed of on the pleadings in Defendants'

6

favor.  Plaintiff has filed an appeal.

Plaintiff's other cases in this district demonstrate that his litigation practice continues with the same themes as described above.    In <u>Matthew Washington v. Dr. Joseph H. Owens, Jr.</u>, 6:94cv39, Plaintiff filed some ten motions to amend, moved to disqualify the undersigned judge, and also expressed his contempt for the undersigned judge by filing a "Motion to Invoke and Execute Rule 15--Retroactive Note:  The Court's School Days are Over". This Court dismissed Plaintiff's complaint upon motion by the Defendant.  The case currently is on appeal.  In <u>Matthew Washington v. Ronald Fountain, et al.</u>, 6:94cv120, Plaintiff has already filed thirteen motions to amend, including one which sought to add President Clinton as a party.  Plaintiff also sought to disqualify the undersigned judge and again invoked the mysterious "Rule 15". The case has been reassigned to Chief Judge B. Avant Edenfield and is still pending.

In the instant case, Plaintiff has sued all of the judges and one magistrate judge from this District as well as one judge and one magistrate judge from the Middle District of Georgia. Plaintiff also unsuccessfully tried to join Judge Michael Karpf of the Superior Court of Chatham County and United States Senator Sam Nunn.  His five motions to amend are overshadowed by the "Motion to Kiss My Ass" which Plaintiff filed (apparently to express his frustration with Magistrate Judge G.R. Smith's refusal to allow the addition of Judge Karpf and Senator Nunn).   This case has been

7

pending less than one year and already Plaintiff has filed three interlocutory appeals.   Likewise, in Matthew Washington v. R.D. Collins, et al., 6:95cv113, Plaintiff has already filed three frivolous interlocutory appeals in a case which is only several months old.[1]

In Matthew Washington v. Dr. Joseph H. Owens, 6:95cv214, Plaintiff has filed a "Motion for Skin Change Operation" in which he desired the government to fund a sex change for him.   When Magistrate Judge W. Leon Barfield denied the motion, Plaintiff filed a "Motion to Impeach" the magistrate.  He also unsuccessfully sought to add the undersigned judge as a party defendant.

In another case which had been originally filed in the Northern District of Georgia, 6:96cv54, Plaintiff sued the same judges as in this case and also added Ted Turner of CNN International for good measure: "Mr. Turner, a fellow Georgian, is and has violated the 'Free Press' of which he 'supposedly stands' with his cartel and CBS endeavors to do the same."   Recently, he filed a "Motion for Catered Food Services" in which he complained about the prison food and moved for a court order allowing him to "receive catered food from some credible responsible business establishment preferred and paid for by Plaintiff."

These are just some examples from some of Plaintiff's recent litigation adventures.   Prior to this decade, Plaintiff had a long

---

[1]Most of Plaintiff's appeals to the Eleventh Circuit are dismissed for either lack of jurisdiction or for lack of brief in support of appeal.

history of litigation within this District.  His recreational litigation has gone on for entirely too long and at great expense to the American taxpayer.  Too many resources have been wasted and too many innocent people harassed.  This Court now considers what discretion it has to prevent the future waste of judicial resources.

The appellate courts have upheld orders which limited a *pro se* plaintiff's access to the courts.  *See* <u>In re Martin-Trigona</u>, 737 F.2d 1254, 1261 (2d Cir. 1984) (holding that "[f]ederal courts have both the inherent power and constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions); <u>Peck v. Hoff</u>, 660 F.2d 371 (8th Cir. 1981); <u>Green v. Carlson</u>, 649 F.2d 285 (5th Cir. 1981).  The Supreme Court has clearly recognized the validity of these judicially ordered curbs on abusive litigation.  *See* <u>In re McDonald</u>, 489 U.S. 180, 184 n.8 (1989).  This circuit has also recognized the power of district courts to strictly control the access which abusive litigants have to judicial resources.  *See* <u>Martin-Trigona v. Shaw</u>, 986 F.2d 1384 (11th Cir. 1993) (per curiam); <u>Copeland v. Green</u>, 949 F.2d 390 (11th Cir. 1991) (per curiam); <u>Cofield v. Alabama Public Service Commission</u>, 936 F.2d 512 (11th Cir. 1991); <u>Procup v. Strickland</u>, 792 F.2d 1069 (11th Cir. 1986) (en banc) (per curiam).

In <u>Procup</u>, the Eleventh Circuit, sitting en banc, considered a district court injunction which banned an abusive prisoner

9

litigant from filing any case unless it was submitted by an attorney admitted before the court.   792 F.2d at 1070.   The Court reversed the district court's injunction but established that district courts' have considerable discretion in restricting an abusive litigant's access to the federal judiciary:   "We hold that the district court's injunction was overbroad, but that the district court has authority to impose serious restrictions on Procup's bringing matters before the court without an attorney." Id.   In so ruling, the Court observed:

> Occasionally, a particularly abusive prisoner, taking advantage of his unique situation, will come along with a flood of claims designed to either harass those in positions of authority or to grind the wheels of the judicial system to a halt. . . . Every lawsuit filed, no matter how frivolous or repetitious, requires the investment of court time, whether the complaint is reviewed initially by a law clerk, a staff attorney, a magistrate, or the judge.

Id. at 1072.

The Procup court, however, reversed the injunction because it found that the attorney-submission requirement could well have the effect of completely foreclosing the plaintiff's access to the courts.   Id. at 1071.   The court noted that, realistically, the plaintiff would have a difficult time obtaining an attorney for even a meritorious claim:   "A private attorney, knowing Procup's track record, might well be unwilling to devote the time and effort necessary to sift through Procup's generally frivolous claims to see if there is one of sufficient merit to undertake legal representation.   A legitimate claim could well go undiscovered."

10

Id. This understandable reluctance on the part of attorneys of the local bar would then amount to a closing of the courthouse door for Procup and, *de facto*, his access to the courts would be denied. Id. "An absolute bar against a prisoner filing any suit in federal court would be patently unconstitutional."  Id.

The court simply ruled that the district court had the correct intentions of curtailing the plaintiff's activity but had acted too zealously to the detriment of the plaintiff's constitutional rights:  "This does not mean that the district court was incorrect in employing injunctive relief.  The district court was fully justified and within its authority in entering injunctive restrictions against Procup.  Such action is necessary and prudent to protect the rights of all litigants in the federal system." Id.

The Procup court further expressed its strong approval of strong litigation restrictions by stating:  "There should be little doubt that the district court has the jurisdiction to protect itself against the abuses that litigants like Procup visit upon it."  Id. at 1073.  Further, a "court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others."  Id.

Indeed, though the Procup court actually reversed the district court injunction, the great weight of the opinion was spent apologizing for the reversal and explaining that district courts may do many things to curtail frivolous litigants except close the

11

courthouse door: "Considerable discretion necessarily is reposed in the district court. Procup can be severely restricted as to what he may file and how he must behave in his applications for judicial relief. He just cannot be completely foreclosed from *any* access to the court." Id. (emphasis in original).

This Court finds that Plaintiff has abused the judiciary and that his abuse has lingered longer than would otherwise be tolerated from normal prisoner plaintiffs because of Plaintiff's status as a pay-to-play litigant. The time has come to take the rattle from the baby and impose some form and discipline upon Plaintiff's law practice within this and other federal courts.

Accordingly, this Court hereby **ENJOINS** Plaintiff from filing a lawsuit in this or any other federal district court unless the following conditions are met:

> 1.   In addition to paying the $120.00 filing fee which Plaintiff has already demonstrated the ability to pay, Plaintiff must post a $1,500.00 contempt bond with the Clerk of Court.[2] This bond will be held by the Clerk of Court and, if Plaintiff has conducted the affairs in his case appropriately within the realm of Federal Rule of Civil Procedure 11, the bond will be returned to Plaintiff at the conclusion of his case.[3]

> 2.   A signed affidavit shall accompany his complaint in which Plaintiff swears that he has read Federal Rule of

---

[2]This Court bases this figure on the knowledge that Plaintiff periodically receives a large disability check from the United States Treasury. On May 14, 1996, Plaintiff had an inmate account balance of $17,017.80. This amount included funds from a May 2, 1996, $14,772.00 check and a May 6, 1996, $1,870.00 check from the United States Treasury. Plaintiff may move this Court to alter the bond requirement if his disability checks permanently cease.

[3]This provision is created to ensure that Plaintiff will not act as he has in the instant case in which he harshly abused several members of the Court and the American taxpayers (who have completely funded his litigious exploits) and then fail to respond to a Rule 11 show-cause order.

Civil Procedure 11 and that he will abide by the tenets listed therein.

3.   A photocopy of this Order shall be attached to his complaint.

The Clerk is **DIRECTED** to return any complaint from Plaintiff not in compliance with this Order.[4] If Plaintiff has complied with the three items above, the Clerk is **DIRECTED** to accept the filing fee and contempt bond and then submit the complaint, prior to filing, to the judge who will be assigned the case.  The judge or magistrate judge will then conduct a frivolity review just as if the case were filed under 28 U.S.C. § 1915.  If the judicial officer determines that the complaint is not frivolous, malicious, or intended to harass, then the judicial officer will allow the case to be filed and service to issue against the named defendants.[5]

This Court is quite sure that, if the villagers who heard the boy cry "wolf" one times too many had some form of reassurance that the boy's last cry was sincere, they would have responded appropriately and he would be alive instead of being dinner for the ravenous canine.  If anything, that story teaches that repetitious tomfoolery can result in disaster for the knave.  This Court will not turn a deaf ear to Plaintiff's future cries.  However, it will

---

[4]The Clerk recently received from Plaintiff an application for judicial action under 42 U.S.C. § 1983 (application # ST 96-78).  The Clerk will return that document to Plaintiff along with a photocopy of this Order.

[5]This Court observes that this requirement will soon be levied upon all prisoner litigants, regardless of *in forma pauperis* status, through the Prison Litigation Reform Act which President Clinton signed into law on April 26, 1996, as part of the omnibus FY 1996 appropriations measure.

13

require Plaintiff to structure his pleas for help in a more sincere manner so that the energies of the villagers are not wasted on the repeated runs up the grassy hill atop which the mischievous boy sits laughing.

SO ORDERED, this _17th_ day of May, 1996.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

14